UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

| | |
|---|---|
| VITO LELLA and ALEX XENIDIS,<br><br>      Plaintiffs,<br><br>  v.<br><br>ZEROFOX HOLDINGS, INC., JAMES FOSTER, TODD HEADLEY, SAMSKRITI KING, ADAM GERCHEN, THOMAS KELLY, TERESA H. SHEA, BARBARA STEWART, and PAUL HOOPER,<br><br>      Defendants. | Case No. 24-cv-02716<br><br>**COMPLAINT FOR (I) VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND (II) BREACHES OF FIDUCIARY DUTY UNDER DELAWARE LAW**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiffs Vito Lella and Alex Xenidis ("Plaintiffs"), by the undersigned attorneys, allege as follows based (i) upon personal knowledge with respect to Plaintiffs' own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiffs' attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

## NATURE OF THE ACTION

  1.  This action is brought by Plaintiffs against ZeroFox Holdings, Inc. ("ZeroFox" or the "Company") and the members of the Company's Board ("Board") for (i) violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"), and (ii) breaches of fiduciary duties under Delaware law. Plaintiffs' claims arise in connection with the solicitation of ZeroFox's public stockholders to vote in favor of a merger transaction ("Merger") pursuant to which ZeroFox will merge into affiliates

of Haveli Investments, L.P. ("Haveli") in exchange for a payment of $1.14 per share in cash by Haveli to ZeroFox stockholders.

2. On February 6, 2024, ZeroFox announced that the Board had approved the sale of the Company to Haveli for $1.14 per share in cash ("Merger Consideration"), pursuant to a merger agreement ("Merger Agreement").

3. On March 18, 2024, Defendants authorized the filing of a false and misleading definitive proxy on Schedule 14A ("Proxy") with the SEC with the aim of soliciting ZeroFox stockholders to vote for the Merger. As detailed below, the Proxy contains material misrepresentations and omissions, and therefore (i) violates Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, and (ii) constitutes a breach of the Board's fiduciary duties under Delaware law.

4. The Proxy advises that a special meeting ("Special Meeting") of ZeroFox stockholders will be held on April 30, 2024, to vote on the Merger ("Stockholder Vote").

5. The material misrepresentations and omissions in the Proxy must be cured in advance of the Stockholder Vote to enable ZeroFox stockholders to cast informed votes with respect to the Merger. Therefore, Plaintiffs seek to enjoin the Defendants from taking any further steps to consummate the Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiffs reserve the right to recover damages suffered by Plaintiffs and other ZeroFox stockholders as a result of such violations, and/or seek other appropriate relief.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction). The Court has subject matter jurisdiction over the claims for breach of fiduciary duty under Delaware law under 28 U.S.C. § 1367 (providing supplemental jurisdiction over all other claims that are related to claims in the action within the Court's original jurisdiction).

7. This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being haled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

8. Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, the Company's common stock trades under the ticker "ZFOX" on Nasdaq, which is headquartered in this District, and the false and misleading Proxy was filed with

the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

9. Plaintiff Vito Lella is and has been a stockholder of ZeroFox common stock at all relevant times.

10. Plaintiff Alex Xenidis is and has been a stockholder of ZeroFox common stock at all relevant times.

11. Defendant ZeroFox is a Delaware corporation with its principal executive offices located at 1834 S. Charles Street, Baltimore, Maryland 21230. ZeroFox provides software to enterprises to detect and disrupt cybersecurity threats.

12. Defendant James Foster served as ZeroFox's Chief Executive Officer, and the Chairman of the Board at all relevant times.

13. Defendant Adam Gerchen served as a member of the Board at all relevant times.

14. Defendant Todd Headley served as a member of the Board at all relevant times.

15. Defendant Paul Hooper served as a member of the Board at all relevant times.

16. Defendant Thomas Kelly served as a member of the Board at all relevant times.

17. Defendant Samskriti King served as a member of the Board at all relevant times.

18. Defendant Teresa H. Shea served as a member of the Board at all relevant times.

19. Defendant Barbara Stewart served as a member of the Board at all relevant times.

20. Defendants identified in paragraphs 12 to 19 are collectively referred to herein as the "Individual Defendants," and together with ZeroFox, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS[1]

**Pre-Merger Background**

21. On November 19, 2020, L&F Acquisition Corp. ("L&F"), a special purpose acquisition company, or SPAC, consummated an initial public offering of 15,000,000 units at $10.00 per unit.

22. Defendant Gerchen was the CEO of L&F and served on its board of directors. Additionally, Gerchen, Richard Levy ("Levy") and Jeffrey C. Hammes ("Hammes"), controlled JAR Sponsor, LLC ("JAR"), L&F's sponsor and controlling shareholder before the IPO.

23. On December 20, 2021, ZeroFox and L&F announced that they had entered into an agreement ("Business Combination Agreement") for a business combination ("Business Combination") that would result in ZeroFox becoming a publicly traded company. As part of the transaction, ZeroFox acquired IDX, a leading provider of digital privacy protection and data breach response services.

24. In connection with execution of the Business Combination Agreement, L&F entered into convertible note subscription agreements ("Convertible Note Agreements") with Monarch Alternative Capital L.P. ("Monarch"); L&F Acquisition Holdings Fund, LLC ("L&F Holdings"), an affiliate of Victory Park Capital Advisors, LLC ("Victory Park")); and an affiliate of Corbin Capital Partners, L.P. ("Corbin"), to purchase $150,000,000 aggregate principal amount of unsecured convertible notes due in 2025 ("Convertible Notes") to be issued in connection with the closing of the Business Combination.

---

[1] Any emphasis in quoted language is added, unless otherwise noted.

5

25. According to documents filed with the SEC in connection with the Business Combination, Defendant Gerchen is a limited partner in funds managed by Monarch.

26. On August 2, 2022, L&F shareholders approved the Business Combination with ZeroFox.

27. On August 4, 2022, ZeroFox began trading on Nasdaq.

**Background to the Merger**

28. On October 2, 2023, the Board authorized the engagement of Piper Sandler as ZeroFox's financial advisor in connection with the Board's review of strategic alternatives.

29. On October 6, 2023, the Board formed the Special Committee, consisting of Defendants Headley, Hooper and Shea, to, among other things, evaluate and review potential strategic alternatives, and make a recommendation to the Board regarding any approval thereof.

30. On October 13, 2023, ZeroFox's outside counsel, Venable, determined that it was not necessary for the Special Committee to engage its own advisors, and therefore the Special Committee began working with Piper Sandler to reach out to potential counterparties.

31. On November 28, 2023, Piper Sandler advised the Board that a total of six entities had submitted proposals to acquire ZeroFox.

32. On December 5, 2023, members of ZeroFox management met in person with a representative of Monarch at Monarch's offices in New York City to discuss ZeroFox's business and capital markets generally. The Proxy does not disclose whether the discussion at the meeting addressed the potential acquisition of ZeroFox, and the repurchase of Monarch's outstanding Convertible Notes in connection with any such acquisition.

33. On December 8, 2023, Haveli reached out to Piper Sandler to express interest in pursuing an acquisition of ZeroFox.

34. On December 22, 2023, Haveli contacted L&F to express interest in the potential acquisition of ZeroFox, and was directed to contact Defendant Gerchen.

35. On December 26, 2023, a Haveli representative had a phone call with Gerchen and reiterated Haveli's interest in the potential acquisition of ZeroFox ("December 26 Haveli Gerchen Call"). The Proxy does not disclose further details concerning the subject matter of the phone call between Gerchen and the Haveli representative (including but not limited to whether the participants on the call discussed price), or whether Gerchen subsequently advised the Special Committee and/or the Board of his phone call with the Haveli representative.

36. On January 27, 2024, Haveli delivered a non-binding letter of intent to acquire the Company for a total enterprise value of $350 million, assuming a fully-diluted share count of 144.5 million shares of Company common stock.

37. During the week of January 28, 2024, at the request of Haveli, members of ZeroFox management negotiated an agreement to repurchase all of the outstanding Convertible Notes held by Monarch concurrent with the closing of the Merger. As per a Form 8-K, dated February 6, 2024, incorporated by reference into the Proxy, ZeroFox agreed to repurchase Convertible Notes from Monarch with an aggregate principal amount of approximately $135.0 million, at a purchase price equal to the entire aggregate principal plus accrued and unpaid interest, concurrent with the closing of the Merger.

38. Between January 29, 2024 and February 5, 2024, ZeroFox management and its advisors further negotiated the terms of the Merger Agreement with Haveli, including increasing the Merger Consideration from $1.12 per share in cash to $1.14 per share in cash.

39. On February 5, 2024, Piper Sandler provided its opinion ("Fairness Opinion") to the Board that the Merger Consideration to be paid to ZeroFox stockholders was fair to such

7

stockholders. Thereafter, the Special Committee convened and resolved to recommend to the Board to approve the Merger, which the Board subsequently did.

40. On February 6, 2024, ZeroFox announced the Merger.

41. As per a Form 8-K, dated March 6, 2024, incorporated by reference into the Proxy, ZeroFox agreed to repurchase Convertible Notes from Corbin with an aggregate principal amount of approximately $25.3 million, at a purchase price equal to the entire aggregate principal, plus accrued and unpaid interest, concurrent with the closing of the Merger.

42. The Proxy, however, fails to incorporate by reference a Form 8-K, dated February 22, 2024, announcing that ZeroFox agreed to repurchase Convertible Notes from L&F Holdings with an aggregate principal amount of approximately $8.4 million, at a purchase price equal to the entire aggregate principal amount, plus accrued and unpaid interest, concurrent with the closing of the Merger.

43. Starting on page 72, the Proxy purports to disclose all of the financial interests of ZeroFox's officers and directors in the Merger that may be different from, or in addition to, the interests of ZeroFox stockholders generally. The Proxy states that the directors covered by such disclosure include Defendant Gerchen. Yet, the Proxy fails to disclose Gerchen's limited partnership interest in Monarch even though Monarch will substantially benefit from the consummation of the Merger as a result of ZeroFox's repurchase of Monarch's Convertible Notes in an aggregate amount of $135.0 million (including all accrued and unpaid interest) concurrently with the closing of the Merger.

**The Proxy Contains Material Misrepresentations and Omissions**

44. Defendants disseminated a materially false and misleading Proxy to ZeroFox stockholders that misrepresents or omits material information, and thus deprives Plaintiffs and other ZeroFox stockholders of their right to cast informed votes with respect to the Merger.

*Material Omissions Concerning Defendant Gerchen's Limited Partnership Interest in Monarch*

45. With respect to conflicts affecting board members, the relevant inquiry is not whether an actual conflict of interest exists, but rather whether full disclosure of potential conflicts of interest has been made.

46. Here, the Proxy purports to disclose all of the financial interests of ZeroFox's officers and directors in the Merger that may be different from, or in addition to, the interests of ZeroFox stockholders generally. The Proxy states that the directors covered by such disclosure include Defendant Gerchen.

47. Yet, the Proxy fails to disclose Gerchen's limited partnership interest in Monarch as a financial interest that differs from the interests of ZeroFox stockholders generally. This is a material omission because Monarch will substantially benefit from the consummation of the Merger by virtue of ZeroFox's repurchase of Monarch's Convertible Notes in an aggregate amount of $135.0 million (including all accrued and unpaid interest) concurrently with the closing of the Merger.

*Material Omissions Concerning the December 26 Haveli Gerchen Call*

48. In cases involving publicly traded companies, sell-side fiduciaries must provide their stockholders with an accurate, full, and fair description of significant meetings or other interactions between target management and bidders.

49.     Here, on December 26, 2023, during a phone call with Gerchen, a Haveli representative reiterated Haveli's interest in acquiring ZeroFox. The Proxy does not disclose further details concerning the subject matter of the phone call between Gerchen and the Haveli representative (including but not limited to whether the participants on the call discussed price), or whether Gerchen subsequently advised the Special Committee and/or the Board of his phone call with the Haveli representative. Since Gerchen was a Board member who approved the Merger, the Proxy's failure to provide further disclosure concerning the December 26 Haveli Gerchen Call is a material omission.

*Material Omissions Concerning Repurchase of Convertible Notes from L&F Holdings*

50.     The obligation not to omit information that renders a statement in a proxy misleading encompasses an obligation to be complete and accurate when making disclosures about a particular topic. That is, once a company chooses to address a specific issue or topic in a proxy, there is a duty to tell the whole truth.

51.     Here, at page 116, the Proxy incorporates by reference two Form 8-Ks disclosing further details concerning ZeroFox's repurchase of Convertible Notes from Monarch and Corbin concurrent with the closing of the Merger. The Proxy, however, fails to incorporate by reference a Form 8-K, dated February 22, 2024, announcing that ZeroFox agreed to repurchase Convertible Notes from L&F Holdings with an aggregate principal amount of approximately $8.4 million, at a purchase price equal to the entire aggregate principal amount, plus accrued and unpaid interest, concurrent with the closing of the Merger.

52.     Given that the Proxy purports to make full disclosure concerning the repurchase of Convertible Notes concurrent with the closing of the Merger, the failure to incorporate by reference the Form 8-K disclosing the repurchase of Convertible Notes from L&F Holdings is a material

omission. This is particularly so because L&F Holdings is an affiliate of Victory Park, which is controlled by Levy who has a beneficial ownership interest in ZeroFox through his control of JAR, which owns 7.4% of the outstanding common shares as of March 15, 2024. (Proxy at 111-113 & n.4). Previously, Levy controlled JAR together with Hammes and Defendant Gerchen.

*Material Omissions Concerning the Fairness Opinion*

53. A financial advisor's fairness opinion is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders. Here, the Proxy's presentation of Piper Sandler's Fairness Opinion improperly fails to disclose certain key information underlying the analyses on which such Fairness Opinion was based. Without this information, as described below, ZeroFox stockholders are unable to fully understand these analyses, and thus are unable to determine what weight to place on the Fairness Opinion in determining whether to vote for the Merger. This omitted information, if disclosed, would significantly alter the total mix of information.

54. With respect to Piper Sandler's *Selected Public Companies Analysis* of ZeroFox's Platform Business, the Proxy fails to disclose the "calculated EV" of any of the purportedly comparable companies included in the analysis. This omission prevents ZeroFox stockholders from being able to determine how much weight to assign to the *Selected Public Companies Analysis* of the Platform Business in determining whether to vote for the Merger because stockholders cannot fully evaluate the extent to which the companies selected for the analysis are comparable to ZeroFox's Platform Business.

55. With respect to Piper Sandler's *M&A Transactions Analysis* of ZeroFox's Platform Business, the Proxy fails to disclose the "total EV" of the targets for any of the purportedly comparable transactions included in the analysis. This omission prevents ZeroFox stockholders

from being able to determine how much weight to assign to the *M&A Transactions Analysis* of the Platform Business in determining whether to vote for the Merger because stockholders cannot fully evaluate the extent to which the targets in the transactions selected for the analysis are comparable to ZeroFox's Platform Business.

56.     With respect to Piper Sandler's *Discounted Cash Flow Analysis* of ZeroFox's Platform Business on a standalone basis, the Proxy discloses that Piper Sandler used a discount rate range of 14.2% to 15.2%, but fails to adequately disclose how Piper Sandler determined that range was appropriate. The explanation that the discount rate range was based on ZeroFox's weighted average cost of capital is insufficient since it does not disclose the risk free rate, U.S. equity premium, and beta adjustments that Piper Sandler used. Ensuring that Piper Sandler used an appropriate discount rate range in its DCF analysis of the Platform Business is material to ZeroFox stockholders since if the discount rate range used by Piper Sandler was artificially high, it would have depressed the value of the Platform Business. *See In re Topps Co. S'holders Litig.*, 926 A.2d 58, 76 (Del. Ch. 2007) (raising discount rates drives down the resulting value range).

57.     With respect to Piper Sandler's *Discounted Cash Flow Analysis* of ZeroFox's Response Business on a standalone basis, the Proxy discloses that Piper Sandler used a discount rate of 20.1%, but fails to adequately disclose how Piper Sandler determined that rate was appropriate. The explanation that the discount rate was based on ZeroFox's weighted average cost of capital is insufficient since it does not disclose the risk free rate, U.S. equity premium, and beta adjustments that Piper Sandler used. Ensuring that Piper Sandler used an appropriate discount rate in its DCF analysis of the Response Business is material to ZeroFox stockholders since if the discount rate used by Piper Sandler was artificially high, it would have depressed the value of the Response Business.

58.  With respect to Piper Sandler's *Selected Public Companies Analysis* of ZeroFox on a whole company basis, the Proxy fails to disclose the "calculated EV" of any of the purportedly comparable companies included in the analysis. This omission prevents ZeroFox stockholders from being able to determine how much weight to assign to the *Selected Public Companies Analysis* of ZeroFox on a whole company basis in determining whether to vote for the Merger because stockholders cannot fully evaluate the extent to which the companies selected for the analysis are comparable to ZeroFox.

59.  Finally, the Proxy does not explain why Piper Sandler did not also conduct a *Selected M&A Transactions Analysis* or *Selected Public Companies Analysis* of the Response Business, or a *Selected M&A Transactions Analysis* of ZeroFox on a whole company basis.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants
for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

60.  Plaintiffs incorporate and repeat each and every allegation above as if fully set forth herein.

61.  SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62. Defendants disseminated a false and misleading Proxy, which made statements that are false and misleading, and omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

63. By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

64. Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce ZeroFox stockholders to vote in favor of the Merger. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

65. The material misrepresentations and omissions in the Proxy specified above are material insofar as a reasonable ZeroFox stockholder would view correction of the misrepresentations and disclosure of the omitted facts specified above as significantly altering the "total mix" of information made available to ZeroFox stockholders.

66. Since, according to the Proxy, ZeroFox cannot consummate the Merger unless the proposal to adopt the Merger Agreement is approved by the affirmative vote of the holders of at least a majority of the outstanding shares of ZeroFox common stock entitled to vote at the Special Meeting as of the record date, the Proxy soliciting the votes of ZeroFox stockholders is an essential

link in the accomplishment of the Merger. Thus, causation is established.

67. Plaintiffs and other ZeroFox stockholders have no adequate remedy at law, and are threatened with irreparable harm insofar as Plaintiffs and other ZeroFox stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

68. Plaintiffs incorporate and repeat each and every allegation above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of ZeroFox within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and/or directors of ZeroFox, and participation in, and/or awareness of ZeroFox's operations, and/or intimate knowledge of the contents of the Proxy filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of ZeroFox with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that are materially false and misleading, and the omission of material facts specified above.

70. Each of the Individual Defendants was provided with access to copies of the Proxy and other statements that were false and misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71. Each of the Individual Defendants had direct and supervisory involvement in the

negotiation of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same. In particular, the Proxy at issue references the unanimous recommendation of the Board to approve the Merger, and recommend that ZeroFox stockholders vote for the Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

72. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered in connection with such negotiation, review and approval.

73. By virtue of the foregoing, the Individual Defendants had the ability to exercise control over and did control a person or persons who violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.

74. Plaintiffs and other ZeroFox stockholders have no adequate remedy at law, and as a result of the Individual Defendants' violations of Section 20(a) of the Exchange Act, are threatened with irreparable harm by virtue of being deprived of their entitlement to cast fully informed votes with respect to the Merger. Therefore, injunctive relief is appropriate.

## COUNT III

### Against the Individual Defendants for
### Breach of Fiduciary Duty Under Delaware Law

75. Plaintiffs incorporate and repeat each and every allegation above as if fully set forth herein.

76. The Individual Defendants, as directors of a Delaware corporation, owed Plaintiffs and other ZeroFox stockholders fiduciary duties under Delaware law.

77. The Individual Defendants breached their fiduciary duties under Delaware law by omitting material facts from the Proxy that are necessary for Plaintiffs and other ZeroFox stockholders to know in order to cast fully informed votes with respect to the Merger at the Special Meeting.

78. The facts omitted from the Proxy as detailed above were material because there is a substantial likelihood that a reasonable ZeroFox stockholder would view disclosure of such facts as significantly altering the 'total mix' of information made available.

79. As a result of the Individual Defendants' breaches of fiduciary duty, Plaintiffs and other ZeroFox stockholders will be harmed by being deprived of their right to cast fully informed votes with respect to the Merger.

80. Plaintiffs and other ZeroFox stockholders have no adequate remedy at law, and as a result of the Individual Defendants' breaches of fiduciary duty, are threatened with irreparable harm by virtue of being deprived of their entitlement to cast fully informed votes with respect to the Merger. Therefore, injunctive relief is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

A. Enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to ZeroFox stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

B. Finding Defendants liable for violating Sections 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

C. Finding the Individual Defendants liable for violating Section 20(a) of the Exchange Act, and breaching their fiduciary duties under Delaware law;

D. Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiffs and other ZeroFox stockholders rescissory damages;

E. Directing Defendants to account to Plaintiffs and other ZeroFox stockholders for all damages suffered as a result of their misconduct;

F. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated: April 10, 2024                   **WOHL & FRUCHTER LLP**

By:/s *Joshua E. Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6588
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Attorneys for Plaintiffs*